UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ST. CHRISTOPHER'S, INC.,

                                    Plaintiff,

         - against -

JOSEPH M. FORGIONE AND JMF
ACQUISITIONS, LLC,

                                    Defendants.
------------------------------------------------------------x

**OPINION & ORDER**

No. 17-CV-4757 (CS)

Appearances:

M. William Scherer
Wilk Auslander LLP
New York, New York
*Counsel for Plaintiff*

Bruce H. Nagel
Robert H. Solomon
Greg M. Kohn
Nagel Rice, LLP
Roseland, New Jersey
*Counsel for Defendants*

Seibel, J.

        Before the Court is Plaintiff's motion to dismiss the Amended Counterclaims of

Defendant/Counterclaimant JMF Acquisitions, LLC ("JMF" or "Defendant").  (Doc. 79.)  For

the following reasons, the motion is GRANTED.

## I.        **BACKGROUND**

        I accept as true the facts, but not the conclusions or arguments, set forth by JMF in its

Amended Counterclaims.  (Doc. 69 ("ACC").).

A.      **Facts**

On July 7, 2015, JMF entered into a real estate contract (the "Contract") with Plaintiff St. Christopher's, Inc. ("St. Christopher's"), whereby Plaintiff would sell to JMF approximately twenty-two acres of land (the "Land") in West Harrison, New York, for a residential development project consisting of not less than thirty-five units (the "Project").  (ACC ¶¶ 5-6.) The Contract provided a "Due Diligence Period" of ninety days so that JMF could, among other things, investigate the property.  (*Id.* ¶ 7; *id.* Ex. A § 1.3.)  The Contract also provided an "Approvals Contingency Date," which was the date by which JMF had to secure "the required governmental and quasi-governmental approvals necessary to construct the Project."  (*Id.* Ex. A § 9.1(B).)  The Approvals Contingency Date was no later than twenty-four months after the end of the Due Diligence Period, and JMF had the right to extend the Approvals Contingency Date for six months on written notice before its expiration.  (*Id.*)  If JMF failed to obtain the necessary approvals by the Approval Contingency Date, either party could elect to terminate the agreement in its entirety.  (*Id.*)  If termination occurred, neither party would have any "further liability or obligation to each other except for those that expressly survive termination of the Agreement." (*Id.*)  Plaintiff was required to "reasonably cooperate with [the] application for the Government approvals."  (*Id.*)

The Contract also provided:

If this transaction fails to close as a result of [Plaintiff's] default, [Defendants] shall be entitled to such remedies for breach of contract as may be available at law and in equity, including without limitation, the remedy of specific performance.

.  .  .  .   If this transaction fails to close due to the default of [Defendants], then [Plaintiff's] sole remedy in such event shall be to terminate this Agreement and to retain the Deposit plus interest earned thereon as liquidated damages, [Plaintiff] waiving all other rights or remedies in the event of such default by [Defendants].

(*Id.* Ex. A §§ 8.1 & 8.2.)

On September 22 and December 30, 2015, the parties amended the Contract to extend the Due Diligence Period.  (*Id.* ¶¶ 9-10; *id.* Exs. B, C.)  The December 30 amendment also redefined the Project as

> A multi-family residential conservation and subdivision (creating the Conservation Parcel and the Development Parcel), and the development on the Development Parcel of multi-family residential units, together with parking, amenities and site improvements.

(*Id.* Ex. C ¶ 3.)

On February 12, 2016, Ralph Herrera, Plaintiff's Director of Building and Grounds, signed a letter authorizing JMF to "submit and process any and all zoning applications necessary for the development of the property."  (*Id.* Ex. D (the "Authorization Letter").)  Pursuant to the Contract, December 30 amendment, and Authorization Letter, JMF moved forward with the Project and paid Plaintiff a deposit.  (*Id.* ¶¶ 16-17.)

On November 4, 2016, however, Plaintiff's counsel sent JMF's counsel a letter stating that Plaintiff wanted JMF to withdraw its proposal for the Project.  (*Id.* ¶¶ 19-20.)  On January 26, 2017, Plaintiff's counsel held a meeting at his office with Defendants to discuss Plaintiff's offer to reimburse JMF for its costs in connection with the work already done, but the following day, Plaintiff's counsel rescinded the offer and again suggested that JMF walk away from the deal.  (*Id.* ¶ 21.)  About a month later, Plaintiff's counsel sent JMF a letter alleging that JMF and Defendant Joseph Forgione had engaged in improper conduct regarding the Project.  (*See id.* ¶ 22.)  Plaintiff's counsel threatened to file a lawsuit against JMF and Forgione and to send a copy of the complaint to the press, which JMF asserts was intended to get it to back out of the deal.  (*Id.*)  St. Christopher's also allegedly stated to JMF that St. Christopher's was contemplating contacting the "Department of Environmental Conservation" to preserve a watershed on the Land to "exclude JMF's development in any form."  (*Id.* ¶ 34.)

Plaintiff's counsel sent another letter to JMF on March 6, 2017, once again threatening to file a lawsuit and go to the press, which JMF alleges was intended to "sully [Defendants'] names" so that the Town of North Castle (the "Town") would not grant JMF approval to start the Project. (*Id.* ¶ 23.) On June 2, 2017, Plaintiff's counsel sent JMF a proposed complaint. (*Id.* ¶ 24.)

On June 6, 2017, Plaintiff's counsel sent a letter to the Supervisor of the Town stating that St. Christopher's intended to file suit against Defendants and noting that Town representatives would likely be "placed in the middle." (*Id.* ¶ 25; *see* Doc. 79-1 ("Scherer Decl.") Ex. A at 3.)[1] The letter went on to explain that the Contract contemplated a thirty-five-unit residential development, but JMF now sought to build a high-density multi-family residential development. (Scherer Decl. Ex. A at 3.) Plaintiff's counsel stated that if the Town "initiated the change" from low density to high density, Plaintiff would have no basis to object to it doing so. (*Id.*) The letter suggests, however, that Plaintiff believed that it had a basis to object if Defendant Forgione had proposed to transform the thirty-five-unit development into one much larger. (*See id.*) Plaintiff's counsel concluded that litigation could be avoided if the Town advised "what actually happened." (*Id.*) An attorney for the Town responded via letter on June 12, 2017, stating that Forgione never proposed a low-density project of thirty-five units, was consistent from the outset that the Project would include at least 120 units, initially proposed 200 units, and most recently applied for 150 units. (*See id.* Ex. A at 4.) The letter also stated that the Town Supervisor never encouraged an increase in density. (*Id.*)

---

[1] Citations to the exhibits attached to the Scherer Declaration refer to the pagination generated by the Court's Electronic Case Filing ("ECF") System.

JMF alleges that Plaintiff informed Defendants that Plaintiff was "against JMF's development of the Project and/or JMF developing the Project, and would not agree to JMF's development being built and/or JMF developing the Project." (*Id.* ¶ 28.) On June 21, 2017, Forgione, on behalf of himself and JMF, sent St. Christopher's a letter stating, "Your attorneys have advised that you do not intend to honor the terms of the contract and plan to file suit to invalidate the agreement," (*id.* ¶ 30; *id.* Ex. E at 2), but Forgione preferred to "move forward with [the] agreement," (*id.* Ex. E at 2).

On June 22, 2017, St. Christopher's filed the Complaint in this case alleging, among other things, that the Contract and December 30 amendment were "fraudulently induced," and seeking an order declaring the Contract and amendment unenforceable. (Doc. 1 ¶¶ 105, 114.) JMF alleges on information and belief that after the Complaint was filed, either Plaintiff or its counsel notified the press, and two local websites published articles regarding the lawsuit, both of which allegedly painted JMF and Forgione in a negative light. (ACC ¶ 26.)

Plaintiff filed its Complaint prior to the time that JMF was obligated to perform its contractual obligations, and, "[a]t the time," JMF was "ready, willing and able to fulfill its contractual obligations" and still "wished, intended and/or desired to develop the Project and fulfill its contractual obligations, and was engaged in doing so." (*Id.* ¶¶ 42-43.)

On March 9, 2018, St. Christopher's sent a letter to JMF stating that St. Christopher's was terminating the Contract pursuant to section 9.1(B) because the Approvals Contingency Date had expired. (*Id.* ¶ 48; Doc. 62 Ex. M.)[2] Despite the termination of the Contract, the Town

---

[2] JMF refers to "Exhibit 'M' attached [to the ACC]," but no such attachment exists. There is an Exhibit M, however, attached to Defendants' answer and JMF's initial Counterclaim. (Doc. 62.)

listed JMF's proposed development, "the Vue," in a Comprehensive Plan the Town released in April 2018.  (Scherer Decl. Ex. D at 5, 7.)

### B.      Procedural History

As noted, St. Christopher's commenced this action on June 22, 2017.  (Doc. 1.)  Four days later, St. Christopher's filed its First Amended Complaint correcting JMF's name but making no substantive changes.  (Doc. 5.)  On August 1, 2017, Defendants filed a pre-motion letter stating their intent to move to dismiss the Amended Complaint.  (Doc. 16.)  In the letter, Defendants also stated that they had "been moving forward pursuant to the Contract to obtain the necessary approvals" but that St. Christopher's lawsuit was "an attempt to derail Defendants['] efforts and und[o] the Contract."  (*Id.* at 1-2.)

Plaintiff filed Second and Third Amended Complaints on January 5, 2018, and February 26, 2018, respectively.  (Docs. 34, 41 ("TAC").)  In its TAC, Plaintiff claimed essentially that it had been misled by Defendants and never would have agreed to a high-density project because it would be incompatible with its mission as a residential facility for autistic children.  (TAC ¶ 12.) Plaintiff fashioned the TAC as one for declaratory judgment and sought declarations that:  (1) no contract was formed because there was no meeting of the minds between Plaintiff and Defendants; (2) the Contract, if formed, is unenforceable because it was fraudulently induced; (3) the December 30 amendment is unenforceable because it was fraudulently induced; (4) the December 30 amendment is unenforceable due to the absence of consideration; (5) the Authorization Letter did not constitute a modification to the Contract, and if it did, it is unenforceable under the statute of frauds and due to a lack of apparent authority of Plaintiff's signatory; and (6) JMF and Forgione are liable for causing Delbello Donnellan Weingarten Wise & Wiederkehr LLP to breach its duty of fidelity to St. Christopher's.  (*Id.* ¶¶ 25, 97-151.)

Plaintiff's TAC stated that it is "not asking for rescission of the Contract . . . or the [December 30] Amendment" and that "St. Christopher's will do whatever, if anything, the court determines it must do." (*Id.* ¶ 26.)

On April 25, 2018, after St. Christopher's sent the March 9, 2018 letter purporting to terminate the Contract, the parties filed a stipulation in which St. Christopher's agreed to voluntarily dismiss the first through fifth counts in the TAC, (which St. Christopher's did (Doc. 55)), and JMF agreed to file an answer to the TAC and counterclaims by June 1, 2018, (Doc. 54 at 2-3).

After requesting two extensions, both Defendants filed an answer, and JMF counterclaimed. (Doc. 62.) After receiving letters from the parties, (Docs. 66-68), the Court held a pre-motion conference and granted JMF leave to amend its counterclaims. (Minute Entry dated July 19, 2018.) JMF filed its ACC on August 2, 2018 and alleged: (1) St. Christopher's anticipatorily repudiated the Contract by urging JMF to walk away from the deal, sending a letter to the Town Supervisor warning him of the potential of future litigation, involving the press, and filing the lawsuit seeking a declaration that the Contract and its amendments are unenforceable; (2) St. Christopher's breached section 8.2 of the Contract – limiting the seller's remedy, in the event of a default by the buyer, to termination of the contract and retention of the deposit – by filing a lawsuit; and (3) St. Christopher's breached the implied covenant of good faith and fair dealing by impeding, hindering, and preventing JMF from fulfilling its contractual obligations. (ACC ¶¶ 50-83.) JMF seeks specific performance of the Contract, or, alternatively, return of deposits paid to St. Christopher's, compensatory damages, and fees and costs. (*Id.* at 20.)

On December 21, 2018, St. Christopher's filed its motion to dismiss the ACC, (Doc. 79), and memorandum of law, (Doc. 79-6 ("P's Mem.")). JMF filed a memorandum of law in

opposition, (Doc. 80 ("D's Opp.")), and St. Christopher's filed a reply memorandum, (Doc. 82 ("P's Reply")).

## II.   LEGAL STANDARD

### A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  "The pleading standard applicable to complaints under Federal Rule of Civil Procedure 12(b)(6) applies equally to counterclaims." *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 691-92 (S.D.N.Y. 2018).

In considering whether a counterclaim states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Twombly*, 550 U.S. at 679.  Deciding whether a claim states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint," or here, counterclaim, "has alleged – but it has not

'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P.

8(a)(2)).

### B.    Documents Properly Considered

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it
> by reference, (2) documents integral to the complaint and relied upon in it, even if
> not attached or incorporated by reference, (3) documents or information contained
> in defendant's motion papers if plaintiff has knowledge or possession of the
> material and relied on it in framing the complaint . . . , and (5) facts of which judicial
> notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal

quotation marks omitted); *see Privado Mktg. Grp. LLC v. Eleftheria Rest Corp.*, No. 13-CV-

3137, 2014 WL 3377107, at *4 (S.D.N.Y. July 7, 2014) (same standard applied to motion to

dismiss counterclaims).  To be incorporated by reference, the complaint must make "a clear,

definite and substantial reference to the documents."  *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).  "A document is integral to

the complaint where the complaint relies heavily upon its terms and effect."  *Goel v. Bunge, Ltd.*,

820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (citation and internal quotation marks

omitted).

I will consider the twelve documents JMF attached to the ACC.  I will also consider the

March 9, 2018 letter from St. Christopher's to JMF giving notice of the termination of the

Contract.  (Doc. 62 Ex. M.)  The March 9 letter was attached as Exhibit M to Defendants'

answer and JMF's initial counterclaim, and JMF refers to it as Exhibit M it in its ACC, (ACC

¶ 48), and refers to the letter in its opposition papers, (D's Opp. at 7), so it appears that the failure

to reattach it to the ACC was a clerical error.  In any event, I consider it incorporated into the ACC by reference, and therefore may consider it on this motion.

St. Christopher's submitted a declaration of its counsel, M. William Scherer, with four exhibits – A through D – some of which contain multiple documents.  (*See* Doc. 79.) Declarations and affidavits submitted in support of a motion to dismiss "are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, not to advance factual averments or legal arguments."  *Clark v. Kitt*, No. 12-CV-8061, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014) (citation omitted), *aff'd*, 619 F. App'x 34 (2d Cir. 2015) (summary order).  Accordingly, I will consider the Scherer Declaration to the extent it describes the documents attached to it, but I will not consider paragraph 6, which comments on the factual background of the case and a legal argument presented in Plaintiff's brief.  *See HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881, 2012 WL 4477552, at *5 (S.D.N.Y. Sept. 27, 2012) ("[I]t it generally improper to consider factual averments or legal arguments contained in an attorney affidavit on a 12(b)(6) motion.").

Exhibit A is an email dated June 16, 2017, that Plaintiff's counsel sent to JMF's counsel, which included two attachments:  a letter dated June 6, 2017, that Plaintiff's counsel sent to the Town and the response the Town sent back to Plaintiff's counsel on June 12, 2017.  (Doc. 79-2.) I will consider the email and the June 6 letter because JMF had knowledge and possession of them – Plaintiff's counsel emailed them to JMF's counsel in June 2017 – and JMF relied on the documents in framing its ACC.  (*See* ACC ¶¶ 25, 57, 75 (citing to the June 6, 2017 letter and stating that St. Christopher's engaged in unlawful behavior when it sent it).)  The June 12 letter is within an exhibit attached to JMF's ACC, (Doc. 69-8 at 26), and therefore I will consider it.  I

consider both letters for the fact that they were sent and the fact of their contents, not for the truth of their contents.

Exhibits B and C are online news articles.  JMF had knowledge of the documents and relied on them in framing its ACC by referring to them specifically, (ACC ¶ 26), and making numerous allegations that Plaintiff involved the press, (*id.* ¶¶ 33, 57, 75).  Accordingly, I will consider Exhibits B and C.

Exhibit D is a portion of "The Town of North Castle Comprehensive Plan," a report prepared by the Comprehensive Plan Steering Committee for the use of the Town Board. "Official government reports and other types of government records are appropriate for judicial notice." *Paskar v. City of N.Y.*, 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014) (collecting cases); *see 10th St. Partners, LLC v. Cty. Comm'n ex rel. Sarasota Cty.*, No. 11-CV-2362, 2012 WL 4328655, at *3 (M.D. Fla. Sept. 20, 2012) (taking judicial notice of a county's Comprehensive Plan).  Accordingly, I may take judicial notice of and consider the Comprehensive Plan, but only for the fact of its existence, not for the truth of its contents.  *See Roth v. Jenning*s, 489 F.3d 499, 509 (2d Cir. 2007) (judicially noticed documents can only be considered for what they state, not to prove the truth of their contents); *Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 397 (S.D.N.Y. 2015) (public documents can be considered "not for the truth of their contents, but rather to establish their existence").

## III.   DISCUSSION

### A.   Anticipatory Repudiation

"Anticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  "Repudiation must be clear and unequivocal to

constitute an anticipatory breach of contract." *Garcia v. Chase Manhattan Bank, N.A.*, 735 F.2d 645, 648 (2d Cir. 1984); *see Stanford Square, L.L.C. v. Nomura Asset Capital Corp.*, 228 F. Supp. 2d 293, 299 (S.D.N.Y. 2002) (anticipatory repudiation requires "overt communication of intention not to perform") (internal quotation marks omitted).

"When confronted with an anticipatory repudiation, the non-repudiating party has two mutually exclusive options." *Lucente*, 310 F.3d at 258; *see Princes Point LLC v. Muss Dev. L.L.C.*, 30 N.Y.3d 127, 133 (2017). The non-repudiating party "may (a) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or (b) [it] may continue to treat the contract as valid and await the designated time for performance before bringing suit." *Lucente*, 310 F.3d at 258. It "cannot at the same time treat the contract as broken and as subsisting," as "[o]ne course of action excludes the other." *Inter-Power of N.Y. Inc. v. Niagara Mohawk Power Corp.*, 686 N.Y.S.2d 911, 913 (1999) (internal quotation marks omitted). Moreover, a non-repudiating party cannot "exercise two alternative or inconsistent remedies," and "[o]nce a party has elected a remedy for a particular breach, [its] choice is binding with respect to that breach and cannot be changed." *Lucente*, 310 F.3d at 258-59 (internal quotation marks and alteration omitted).

Plaintiff argues that JMF has failed to plead an anticipatory repudiation claim because it did not elect, and does not allege that it elected, to treat Plaintiff's alleged repudiation as a breach of the Contract. (P's Mem. at 5-6.) Plaintiff further argues that the ACC is inconsistent in that it includes a claim of anticipatory repudiation and seeks specific performance, meaning JMF is impermissibly attempting to simultaneously treat the contract as breached and still in effect. (*See id.* at 1, 6.) Finally, Plaintiff argues that it did not repudiate the contract because, even if the

Court considers its Complaint as seeking rescission, filing a rescission action is not a clear and unequivocal repudiation.  (*Id.* at 6.)  JMF argues that it is entitled to plead claims in the alternative and thus claims for anticipatory repudiation and breach of contract are not at odds; Plaintiff filing this action was a clear and unequivocal statement of repudiation, and even if it is not, Plaintiff's other acts of interference with the Contract were clear statements of repudiation; and JMF's counterclaims were brought at a reasonable time after Plaintiff's repudiation, and therefore there is no election of remedies issue.  (D's Opp. at 18-25.)

JMF has failed to plausibly allege that Plaintiff repudiated.  As noted, repudiation must be clear and unequivocal.  *See, e.g.*, *Garcia*, 735 F.2d at 648.  JMF alleges that St. Christopher's repudiated by trying to convince JMF to back out of the deal, threatening litigation, threatening to give information to the press, informing the Town of potential litigation in which the Town might be involved, filing the instant suit, and giving the Complaint to the press.  (ACC ¶ 57.) With regard to the lawsuit, "actions seek[ing] a judicial determination as to the terms of a contract, and the mere act of asking for judicial approval to avoid a performance obligation is not the same as establishing that one will not perform that obligation absent such approval," *Princes Point*, 30 N.Y.3d at 134, and therefore an action for rescission would not amount to a clear and unequivocal repudiation.  Further, publicizing its Complaint, notifying the Town of possible litigation, and trying to convince JMF to back out of the deal do not amount to a clear and unequivocal statement that St. Christopher's would not perform if it had an obligation to do so.

But even if Plaintiff repudiated, JMF's anticipatory repudiation claim still fails because JMF failed to treat Plaintiff's alleged repudiation as a breach and instead elected to treat the Contract as valid.  JMF therefore had to wait until Plaintiff in fact breached before bringing a claim.  *See Lucente*, 310 F.3d at 258-59 ("Once a party has elected a remedy for a particular

13

breach, his choice is binding with respect to that breach and cannot be changed.").  Because no such breach occurred, as discussed in greater detail below, JMF has no anticipatory repudiation claim.

"Technically speaking, there is no cause of action for 'anticipatory breach of contract.' There is only a claim for breach of contract," and in the context of anticipatory repudiation, "the promisee gets to choose whether the breach occurs at the time of the *anticipatory repudiation*, or at the time for *performance*."  *Lucente v. Int'l Bus. Machs. Corp.*, 146 F. Supp. 2d 298, 309 n.5 (S.D.N.Y. 2001) (emphasis in original).  "Thus, a repudiation by one party *may* constitute a breach of the contract, excusing the non-repudiating party from further performance and entitling it to claim damages for total breach; but, a repudiation constitutes a breach only if the non-repudiating party elects to treat it as such."  *Vision Entm't Worldwide, LLC v. Mary Jane Prods., Inc.*, No. 13-CV-4215, 2014 WL 5369776, at *5 (S.D.N.Y. Oct. 17, 2014) (emphasis in original). What the non-repudiating party cannot do, and what JMF is attempting to do here, is ignore the alleged repudiation and treat the contract as valid but then elect to terminate at an arbitrary time, before any breach occurs.  *See Lucente*, 310 F.3d at 259 (non-repudiating party who treats contract as valid "does not have an action against the repudiating party until an actual breach occurs").

Plaintiff's efforts to end the deal began in November 2016, (ACC ¶¶ 19-20), but JMF treated the Contract as valid until after Plaintiff terminated it in March 2018.  For example, in June 2017, Forgione wrote a letter to St. Christopher's stating that, despite the impending lawsuit, Defendants preferred to "move forward with [the] agreement," (*Id.* ¶ 30; *id.* Ex. E at 2.) Additionally, in a letter dated August 1, 2017, more than a month after St. Christopher's initiated the instant action and after it had allegedly leaked the Complaint to the press and informed the

Town of the lawsuit, JMF told this Court that it was "moving forward pursuant to the Contract to obtain the necessary approvals." (Doc. 16 at 1.) Such a statement cannot be reconciled with an election to treat Plaintiff's actions, virtually all of which took place well before August 1, 2017, as a repudiation.[3] It was not until June 2018 when JMF brought its counterclaims that it alleged anticipatory repudiation for the first time. (*See* Doc. 62.) Because JMF did not "elect to treat the repudiation as an anticipatory breach," its only option was to "continue to treat the contract as valid and await the designated time for performance before bringing suit." *Lucente*, 310 F.3d at 258. JMF, however, did not bring its claim for anticipatory repudiation until after St. Christopher's terminated the Contract, which is not a breach as discussed below.

JMF attempts to skirt the election of remedies issue by arguing that "'[t]here is no specific time limit within which to make [its] election,'" a non-repudiating party is permitted to wait a reasonable time after learning of the breach, and "'[h]ow much time is reasonable depends on the nature of the performance to be rendered under the contract.'" (D's Opp. at 24 (first quoting *Lucente*, 310 F.3d at 259, then quoting *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1013 (S.D.N.Y. 1995)).) JMF adds that "'[t]he question of what is a reasonable period of time for performance of a particular contract is a question of fact for a jury, unless the facts are undisputed, in which case the question becomes one appropriate for [judgment as a matter of law].'" (*Id.* at 24-25 (quoting *Vision Entm't Worldwide*, 2014 WL 5369776, at *7).)

While the cases JMF cites indicate that courts may be flexible in determining what constitutes the "reasonable time" by which a party must elect its remedy, none of them support

---

[3] The only events alleged to have occurred subsequent to Plaintiff's filing of the lawsuit on June 22, 2016, are the publication of two online articles on July 14 and August 29, 2017, respectively. It is not alleged when Plaintiff or its counsel might have provided information to the sites.

the notion that a non-repudiating party can wait nearly a year after the alleged repudiation to elect to treat it as a breach.  In fact, the court in *Bigda* (a case cited by JMF) found a party's delay of "several weeks" to be "too long to exercise his option to terminate the contract."  *Bigda*, 898 F. Supp. at 1013.  Further, "[t]he critical factor" in determining the reasonableness of the timing of JMF's election "is not the passage of time but whether the non-breaching party has taken an action (or failed to take an action) that indicated to the breaching party that [it] had made an election."  *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 394 (S.D.N.Y. 1999) (internal quotation marks omitted) (second alteration in original).  Here, JMF has failed to plausibly allege that it reasonably indicated to Plaintiff that it elected to treat the purposed repudiation as a breach.  To the contrary, JMF gave every indication that it intended to treat the Contract as valid.  By "treat[ing] the contract . . . as subsisting," JMF lost its option to later treat the Contract as "broken."  *Inter-Power*, 686 N.Y.S.2d at 913.  Its attempt to treat the alleged repudiation as a breach nearly a year later is unreasonable.  Accordingly, Plaintiff has failed to plead an anticipatory repudiation claim.[4]

_____

[4] JMF's anticipatory repudiation claim is not dismissed because it is inconsistent with its breach of contract claim; it is dismissed because JMF has failed to plausibly plead an unequivocal repudiation or that it elected to treat any such repudiation as a breach.  JMF is correct that under certain circumstances a party is permitted to plead allegations in the alternative, but in this context, as a matter of substantive law, a party "cannot have it both ways. [It] cannot at the same time treat the contract as broken and subsisting, for one course of action excludes the other and the law simply does not permit a party to exercise two alternative or inconsistent remedies."  *Wallach v. Smith*, No. 15-CV-1080, 2017 WL 2957829, at *6 (W.D.N.Y. July 11, 2017) (internal quotation marks and alterations omitted), *aff'd sub nom. In re NanoDynamics, Inc.*, 735 F. App'x 762 (2d Cir. 2018) (summary order).  None of the cases that JMF cites holds otherwise, and none even addresses election of remedies issues.  Instead they discuss whether a party may claim that a counterparty breached a contract and, alternatively, did not breach but merely repudiated.

B.     **Breach of Contract**

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

1.     **JMF's Second Counterclaim**

JMF's first of two breach of contract claims alleges that Plaintiff breached section 8.2 of the Contract when it filed the instant action.  (ACC ¶ 63-70.)  Section 8.2 provides:

> If this transaction fails to close *due to the default of* [*Defendants*], then [Plaintiff's] sole remedy in such event shall be to terminate this Agreement and to retain the Deposit plus interest earned thereon as liquidated damages, [Plaintiff] waiving all other rights or remedies in the event of such default by [Defendants].

(*Id.* Ex. A § 8.2 (emphasis added).)  JMF alleges that Plaintiff, by suing JMF, violated this provision.  But this provision is inapplicable.  Plaintiff has never alleged that Defendants defaulted; rather, Plaintiff sought to render the Contract unenforceable due to the circumstances under which the parties entered into it.  (*See* Docs. 5, 34, TAC.)  JMF, unsurprisingly, has also failed to plead any facts to suggest that it defaulted prior to Plaintiff filing its Complaint.  Section 8.2 of the Contract was therefore never triggered, and Plaintiff cannot be deemed to have breached it.  Accordingly, JMF's second claim is dismissed.

2.     **JMF's Third Counterclaim**

JMF's third counterclaim alleges that Plaintiff breached the Contract's implied covenant of good faith and fair dealing by impeding, hindering, and preventing JMF from fulfilling its contractual obligations.  (ACC ¶¶ 71-83.)  St. Christopher's moves to dismiss on the ground that any claim by JMF for breach of contract did not survive Plaintiff's termination of the Contract

pursuant to section 9.1(B).  (P's Mem. at 7-8.)  JMF responds that "the reason Defendants were unable to fulfill their contractual obligations – including obtaining the Government Approvals, which form the basis of Plaintiff's purported termination of the Contract pursuant to § 9.1(B) – is because Defendants *were prevented from doing so by St. Christopher's numerous breaches of the Contract*."  (D's Opp. at 12 (emphasis in original).)

JMF bases its argument on the prevention doctrine, which provides that "[o]ne who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition."  *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 169 (2d Cir. 1966).  Accordingly, that party is not "permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised."  *Id.*; *see Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587, 605 (S.D.N.Y. 2015) ("[A] party may not insist upon performance of a condition precedent when its non-performance has been caused by the party itself.") (internal quotation marks omitted); *Cauff, Lippman & Co. v. Apogee Fin. Grp., Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992) ("[A] party may not rely on another party's failure to perform a condition precedent to discharge that party's obligations under a contract where that party frustrated or prevented the occurrence of the condition.").  "[T]he prevention doctrine, where it applies, creates nothing more than an *implied* contractual obligation, similar to – and perhaps rooted in – the implied covenant of good faith and fair dealing."  *Consol. Edison, Inc. v. Ne. Utils.*, 426 F.3d 524, 529 (2d Cir. 2005) (emphasis in original).

JMF's prevention-doctrine argument is premised on its assertion that Plaintiff's "breaches of the Contract . . . prevented [Defendants] from performing."  (D's Opp. at 13.)  But JMF has failed to plausibly allege that Defendants were prevented from performing – *i.e.*, were unable to

obtain government approvals – due to Plaintiff's conduct.  JMF asserts in the ACC that Plaintiff "attempted to poison the [T]own against the Project," (ACC ¶ 27; *see id.* ¶ 75(c)-(d)), pressured JMF to back out of the deal, (*id.* ¶ 75(a)-(b)), threatened JMF that it would involve the Department of Environmental Conservation, (*id.* ¶ 75(e)), involved the press, (*id.* 75(f)), and filed the instant lawsuit, (*id.* ¶ 75(g)).  But these allegations, without more, do not show that Plaintiff's "lack of cooperation . . . contribute[d] materially to [Defendants'] inability to perform."  *Pereira v. Nelson* (*In re Trace Int'l Holdings, Inc.*), 284 B.R. 32, 37 (Bankr. S.D.N.Y. 2002); *see MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 950 F. Supp. 2d 568, 618 (S.D.N.Y. 2013) ("[W]here a party's breach by nonperformance contributes *materially* to the non-occurrence of a condition of one of his duties, the non-occurrence is excused.") (emphasis added) (quoting Restatement (Second) of Contracts § 245 (Am. Law Inst. 1981)); *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*, No. 07-CV-432, 2009 WL 3124219, at *6 (S.D.N.Y. Sept. 29, 2009) (same).  JMF has not alleged a single fact regarding the steps it took to obtain government approvals or how Plaintiff's actions frustrated those efforts.  Indeed, the majority of Plaintiff's allegations, which involve communications between only Plaintiff and Defendants, could not have had any impact on the likelihood the Town would approve the Project.  And the allegations regarding the letter to the Town and the online articles regarding the lawsuit are not alleged to have altered the approval process whatsoever, let alone materially so.  In other words, while JMF alleges that St. Christopher's attempted to and did poison the Town against Defendants, its allegations on those points, (*see* ACC ¶¶ 27, 47, 81), are conclusory.  The ACC does not allege

how Plaintiff's actions had any effect on Defendants' performance or otherwise suggest that the necessary approvals would have been forthcoming but for Plaintiff's actions.[5]

JMF has therefore failed to plausibly allege that Plaintiff "contribute[d] materially" to Defendants' failure to satisfy the condition precedent, *see In re Trace Int'l Holdings, Inc.*, 284 B.R. at 37, and thus that St. Christopher's termination of the Contract pursuant to section 9.1(B) constituted a breach.[6]  Because the termination was appropriate and because "no further liability or obligation . . . survive[s] termination," (ACC Ex. A § 9.1(B)),[7] St. Christopher's cannot be liable for a breach of the Contract.

Even if St. Christopher's had not successfully terminated the Contract, JMF's third counterclaim would be dismissed because JMF has failed to plead causation.  JMF argues that causation is not an essential element in a breach of contract claim, (D's Opp. at 17), but it is wrong.  "[C]ausation is an element – and a crucial one – of the plaintiff's *prima facie* case" for breach of contract, *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir. 2004); *Diesel Props*, 631 F.3d at 52-53 ("Causation is an essential element of damages in a breach of contract action . . . ."), as well as Plaintiff's claim for breach of the implied covenant of

---

[5] In fact, the only allegations or evidence in the record regarding the Town's perception of Defendants suggest that the Plaintiff's alleged efforts to poison the Town were unsuccessful. The inclusion of Defendant's Project – "the Vue" – in the Town's Comprehensive Plan in April 2018 suggests that Plaintiff had not derailed or undermined the Town's consideration of Defendants' Project.  (Scherer Decl. Ex. D at 5, 7.)  Additionally, Defendants had the option to extend the Approvals Contingency Date, which would have prevented St. Christopher's from terminating the Contract, but JMF failed to exercise it.

[6] JMF's argument that section 5 of the Contract controls because the failure to obtain government approvals was caused by Plaintiff's breach, (D's Opp. at 14), fails for the same reason:  JMF has failed to plausibly allege that failure to obtain government approvals was caused by Plaintiff.

[7] JMF does not argue that its claims involve an obligation that "expressly survive[s] termination."  (ACC Ex. A ¶ 9.1(B).)

good faith and fair dealing, *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F.

Supp. 3d 16, 37 (S.D.N.Y. 2017), *aff'd*, 712 F. App'x 85 (2d Cir. 2018) (summary order).

Accordingly, Plaintiff must plausibly allege that Plaintiff's breach "*directly and proximately

caused* [its] damages. *Nat'l Mkt. Share*, 392 F.3d at 525 (emphasis in original).  But JMF, as

discussed above, has pleaded only in conclusory fashion that Plaintiff prevented it from

performing.  Absent facts rendering that conclusion plausible, JMF has failed to sufficiently

plead that its damages are "attributable to [Plaintiff's] breach."  *CAE Indus. Ltd. v. KPMG Peat

Marwick*, 597 N.Y.S.2d 402, 404 (App. Div. 1993).

Accordingly, JMF's third claim is dismissed.

## IV.   LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to

amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to

amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment . . . .'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman

v. Davis*, 371 U.S. 178, 182 (1962)).

JMF has already amended, after having the benefit of the Court's observations during a

pre-motion conference.  (Minute Entry dated July 19, 2018), and two letters from Plaintiff

regarding the perceived problems with the counterclaims.  (Docs. 66, 68.)  In general, a

claimant's failure to fix deficiencies in the previous pleading, after being provided notice of

them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v.*

*U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnotes, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, while JMF request leave to amend, (Ds' Opp. at 25), it has not suggested that it possesses additional facts that could remedy the problems, *see Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (proper to dismiss with prejudice where no indication plaintiff could or would provide additional allegations leading to different result). Indeed, it appears that the issues fatal to JMF's

counterclaims are substantive and cannot be cured by better pleading.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Accordingly, the Court declines to grant leave to amend.

## V.     <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's motion to dismiss JMF's counterclaims is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion.  (Doc. 79.)

**SO ORDERED.**

Dated: July 11, 2019
         White Plains, New York

_____
         CATHY SEIBEL, U.S.D.J.